United States District Court
Southern District of Texas
**ENTERED**
August 12, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **POINTEAST PHARMA CONSULTING, INC.,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:21-CV-3654** |
| **LENZING AKTIENGESELLSCHAFT**, *et al.,* | § § § | |
| **Defendants.** | § § | |

## MEMORANDUM AND RECOMMENDATION

This is an international business dispute between Plaintiff and several foreign Defendants involving the design, manufacturing, and distribution of facemasks during the COVID-19 pandemic. Pending before the Court[1] are one of the Defendant's Motion to Dismiss (Dkt. No. 2) and Motion to Strike Plaintiff's Exhibits (Dkt. No. 12). Based on a thorough review of the motions, evidence, and relevant law, the Court **RECOMMENDS** both Motions be **DENIED**.

## I.    BACKGROUND

Plaintiff PointEast Pharma Consulting, Inc. ("PointEast") filed this lawsuit on September 10, 2021 in the 333rd Judicial District of Harris County, Texas against Defendants Lenzing Aktiengesellschaft ("Lenzing"), Palmers Textil Aktiengesellschaft ("Palmers"), Hygiene Austria LP GmbH ("Hygiene Austria"), Stephan Trubrich ("Trubrich"), and Tino Wieser ("Wieser") alleging generally that Defendants stole its branding ideas for facemasks without compensation and breached their oral agreement regarding facemask distribution in Texas. (Dkt. No. 1-2 at 4–

---

[1] On April 26, 2022, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 26.)

27.) PointEast amended its complaint in state court on November 2, 2021 and asserts claims against all Defendants for fraud, fraud in the inducement, negligent misrepresentation, breach of contract, unjust enrichment, and violations of the Texas Theft Liability Act based on the factual allegations explained below. (*Id.* at 57–80.) PointEast asserts all Defendants are jointly liable because they entered into an agreement with a common purpose, acted as agents of each other, and participated together to unfairly profit off of PointEast's services. (*Id.* at 77–79.) Lenzing is the only Defendant who has appeared in this case.

PointEast is a family-owned pharmaceutical consulting company based in Houston, Texas and operated by Georg Fischer and Leonard Fischer. (Dkt. No. 1-2 at 58.) Lenzing and Palmers are Austrian textile companies that joined forces in April 2020 to create another company, Hygiene Austria, in response to the COVID-19 pandemic. (*Id.* at 58, 60.) During the relevant time period, Trubrich was both the Vice President of Capital Markets at Lenzing and the Co-CEO at Hygiene Austria.[2] (*Id.* at 58.) Wieser was part owner of Palmers and co-director at Hygiene Austria. (*Id.* at 59.) In July 2020, a consultant for Hygiene Austria contacted PointEast to inquire about facemask distribution in the United States. (*Id.* at 60.) Georg and Leonard Fischer then met by video with Trubrich and Anna Doboczky, the Director of Sales at Hygiene Austria, and set an intention to create an exclusive distribution deal for PointEast in the United States. (*Id.* at 61.) Hygiene Austria also later promised to create a joint venture with PointEast to be headquartered in Texas. (*Id.*)

The parties exchanged various draft term sheets over the coming months. (Dkt. No. 1-2 at 62.) On October 30, 2020, Georg and Leonard Fischer met with Trubrich and Wieser in Vienna, Austria in order to finalize the distribution agreement. (*Id.*) According to PointEast, Trubrich represented both Lenzing and Hygiene Austria and Wieser represented both Palmers and Hygiene

---

[2] Lenzing asserts Trubrich was a co-director at Hygiene Austria, not Co-CEO.

Austria. (*Id.*) In fact, they gave out business cards from Lenzing and Palmers at the meeting. (*Id.*) Wieser told Georg Fischer that verbal contracts were binding in Austria and promised Leonard Fischer that Hygiene Austria "would make him rich." (*Id.* at 62–63.) The parties then entered into an oral contract for PointEast to exclusively distribute Hygiene Austria's "Made in Austria" masks in the United States. (*Id.* at 63.) PointEast took this as a contract with Hygiene Austria as well as its parent companies, Lenzing and Palmers, given Trubrich and Wieser had presented themselves at the meeting as representatives of those organizations. (*Id.*)

PointEast then conducted market research, created branding and design strategies, and submitted paperwork for authorization to the U.S. Food and Drug Administration ("FDA"). (Dkt. No. 1-2 at 63.) PointEast recommended Hygiene Austria distinguish its masks by using a red nosepiece in order to signify they were made in Austria and of Austrian quality, and Hygiene Austria agreed. (*Id.* at 64–65.) The red nosepiece caused the masks to be "instantly recognizable" in the Austrian market and added over $600 million in value to Hygiene Austria. (*Id.* at 66–67.) However, according to PointEast, Hygiene Austria never manufactured the masks in Austria as promised and as represented to the FDA. (*Id.* at 68.) In March 2021, the Austrian authorities raided Hygiene Austria and found boxes of masks that were manufactured in China but falsely labeled "Made in Austria." (*Id.* at 70.) Hygiene Austria never followed through with exporting masks to PointEast in the United States and, in early 2021, stopped communicating with PointEast altogether. (*Id.* at 71.) Hygiene Austria never compensated PointEast for the work it did or the branding and design concepts it created. (*Id.* at 73–74.)

On November 6, 2021, Lenzing removed this action to federal court based on diversity jurisdiction. (Dkt. No. 1.) Lenzing then filed a Motion to Dismiss based on lack of personal jurisdiction and forum non conveniens. (Dkt. No. 2.) Lenzing argues that it never directed any

activities towards Texas, it is a completely separate company from Hygiene Austria that does not produce or sell facemasks, and Trubrich at all times acted on behalf of Hygiene Austria only. (*Id.* at 27–37.) Lenzing also argues PointEast knew it was dealing only with Hygiene Austria and that PointEast improperly tries to "loop in" Lenzing to Hygiene Austria's conduct. (Dkt. No. 13 at 12–15.) Lenzing further argues that, even if the Court finds personal jurisdiction over it, Austria is the appropriate forum to resolve the dispute because the witnesses are in Austria, much of the evidence is in German, and Austrian law might apply. (Dkt. No. 2 at 48–50.)

PointEast argues specific jurisdiction over Lenzing exists because Lenzing, through its own conduct and through Trubrich's conduct as its agent, purposefully directed activities towards Texas and those activities give rise to this controversy. (Dkt. No. 11 at 18–26.) For example, PointEast points out that Lenzing stamped invoices for sample masks shipped to Texas, included its logo on the mask packaging sent to the FDA for approval, used its employees to help spearhead the FDA approval process, and issued multiple press releases expressing the progress and goals of Hygiene Austria. (*Id.*) PointEast also points out that Trubrich sent several relevant emails to PointEast from his Lenzing email address and provided his Lenzing business card at the meeting in Vienna. (*Id.*) Finally, PointEast argues the case should not be dismissed based on forum non conveniens because it would impose unfair costs on it as a family-owned business, it is feasible for Lenzing to transport documents or witnesses to Texas, and Texas law applies to this case, among other reasons. (*Id.* at 38–42.)

On April 6, 2022, the District Judge in this case granted PointEast's opposed request to conduct jurisdictional discovery and gave the parties permission to file supplemental briefing after the discovery was complete. (Dkt. No. 25.) Both parties submitted additional briefing and

evidence, generally maintaining their original positions and disputing whether Trubrich ever acted on behalf of Lenzing during his course of dealings with PointEast. (Dkt. Nos. 30, 36.)

The Court has thoroughly reviewed the parties' evidence and briefing.[3] The Court finds that it has personal jurisdiction over Lenzing because it purposefully directed its activities to Texas, through Trubrich and through its own conduct, and that those activities give rise to the claims alleged in this suit. The Court also finds that the Southern District of Texas, and not Austria, is the proper forum for this dispute because the factors relevant to dismissal do not weigh strongly in favor of depriving PointEast of its choice to litigate in its home forum. Lenzing's Motion to Dismiss should be denied.

## II.    PERSONAL JURISDICTION

### A.  Legal Standards

Rule 12(b)(2) allows a defendant to move to dismiss a complaint based on lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). "The plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant[.]" *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). A federal court may exercise jurisdiction over a non-resident defendant if "the long-arm statute of the forum state creates personal jurisdiction over the defendant" and "the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Id.* Texas's long-arm statute reaches to the constitutional limits and thus the inquiry collapses into the question of whether exercising personal jurisdiction over the defendant would

---

[3] Both parties have submitted extensive briefing in violation of Judge Hanen's rules, which limit parties to 20 pages of argument per brief absent leave of the Court. (*See* Civil Procedures of Judge Andrew S. Hanen, Rule 7L.) In fact, Lenzing submitted a 43-page opening brief, a 31-page reply brief, and a 42-page supplemental brief (*see* Dkt. Nos. 2, 13, 36) and PointEast submitted a 42-page response brief (*see* Dkt. No. 11). This does not include the parties' various other related filings. (*See* Dkt. Nos. 12, 14, 15, 30.)

be consistent with due process. *Id.* "Exercising personal jurisdiction over a nonresident defendant is consistent with due process when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (quotations omitted).

The first requirement—minimum contacts—can give rise to either general or specific jurisdiction. *Clemens*, 615 F.3d at 378. PointEast argues only that specific jurisdiction exists over Lenzing. Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (quotations omitted). The defendant's contacts with the forum "must be more than random, fortuitous, or attenuated, or of the unilateral activity of another party or third person," *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012) (quotations omitted), and must be directed at the forum "such that he could reasonably anticipate being haled into court in the forum state." *Clemens*, 615 F.3d at 378 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). The second requirement—fair play and substantial justice—is not at issue in this case.

"When a district court rules on a Rule 12(b)(2) motion without a hearing, as is the case here, the plaintiff must make a prima facie showing of jurisdiction." *Nguyen v. Phu Nguyen*, No. 19-CV-2229, 2020 WL 709328, at *3 (S.D. Tex. Feb. 12, 2020). "[P]roof by a preponderance of the evidence is not required." *Logan Int'l Inc. v. 1556311 Alberta Ltd.*, 929 F. Supp. 2d 625, 630 (S.D. Tex. 2012); *see Marin v. Michelin N. Am., Inc.*, No. 16-CV-497, 2017 WL 5505323, at *4 (W.D. Tex. Sept. 26, 2017) (collecting cases). "[T]he district court may consider the contents of

the record before the court at the time of the motion, including affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (quotations omitted). "But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Assocs.*, 517 F.3d at 241. The court need not credit conclusory allegations as true, even if uncontroverted. *Panda Brandywine Corp.*, 253 F.3d at 869.

### B. Evidence

Lenzing moves to strike PointEast's exhibits regarding personal jurisdiction because "PointEast's use of incomplete, cropped, or altered exhibits are an attempt to manufacture a basis" for personal jurisdiction. (Dkt. No. 12 at 1.) Lenzing particularly argues PointEast's description of the draft term sheets is misleading and should be stricken under Federal Rule of Evidence 1002. (*Id.* at 2–6.) Lenzing also argues PointEast's email evidence is incomplete and should be stricken under Federal Rule of Evidence 106. (*Id.* at 6–15.) Lenzing asserts that the full version of the evidence demonstrates PointEast sought to make a deal only with Hygiene Austria, and not Lenzing, and "kills" PointEast's theories otherwise. (*Id.* at 2.) The Court disagrees.

First, this request is no longer an issue, at least to an extent. PointEast submitted the complete versions of some of the disputed evidence with its supplemental briefing and Lenzing did not object. (*See* Dkt. No. 30-1 at 354–55 (August 10, 2020 draft term sheet), 368–76 (August 20, 2020 email and photos of sample masks), 378–85 (market access recommendations).) Second, contrary to Lenzing's assertions, PointEast did not engage in egregious conduct by intentionally hiding evidence that it interacted with Hygiene Austria. PointEast submitted its evidence in order to rebut the argument that Trubrich never acted on Lenzing's behalf and that Lenzing has only an

arms-length business relationship with Hygiene Austria. PointEast was not arguing that Trubrich had no relationship with Hygiene Austria or that Hygiene Austria was completely removed from the business dealings at issue. PointEast also never attempted to present its descriptions of draft term sheets as evidence or alter photos in a deceptive way. Third, it is not clear the Federal Rules of Evidence even apply to a Rule 12(b)(2) analysis. *See Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 968 (S.D. Tex. 2018) (holding "a plaintiff's supporting evidence does not need to be admissible to be considered at the Rule 12(b)(2) stage"); *Cantu v. TitleMax, Inc.*, No. 14-CV-628, 2015 WL 4526987, at \*2 (W.D. Tex. July 23, 2015).[4]

PointEast's evidence should not be stricken. Nevertheless, the Court agrees with Lenzing's alternative request to consider the evidence in full and has done so in evaluating this case.

### C.  Application

In evaluating personal jurisdiction over Lenzing, the Court first examines whether an agency relationship exists between Trubrich and Lenzing such that Trubrich's actions can be imputed to Lenzing. The Court next examines whether Trubrich's actions on behalf of Lenzing constitute minimum contacts with Texas and give rise to the specific claims asserted in this case. The Court finds that PointEast has made a prima facie showing as to each of these inquiries and has thus established personal jurisdiction over Lenzing.

### 1.  The evidence sufficiently shows Trubrich acted on behalf of Lenzing in his dealings with PointEast.

"[T]he actions of an agent may establish minimum contacts over a principal" in the context of specific personal jurisdiction. *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009); *see also*

---

[4] This is because a defendant can "ultimately hold the plaintiff to his/her burden of establishing personal jurisdiction by a preponderance of the evidence (and subject to the Federal Rules of Evidence) at trial." *Head*, 298 F. Supp. 3d at 968. Given this reasoning, Lenzing's attempt to distinguish the rules against hearsay from the rest of the rules of evidence is unavailing.

*Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). A plaintiff must make a prima facie

showing that an agency relationship exists such that the agent has actual or apparent authority to

act on behalf of the principal. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869–70 (5th

Cir. 2000) (requiring plaintiff to make a prima facie showing as to agency when the court did not

hold an evidentiary hearing). Under Texas law, agency exists when "the principal has both the

right: (1) to assign the agent's task; and (2) to control the means and details of the process by which

the agent will accomplish that task." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th

Cir. 2018) (quotations omitted). Apparent agency "exists where the principal's conduct would lead

a reasonably prudent person to believe that the agent possessed the authority to act on behalf of

the principal." *IRA Res., Inc. v. Griego*, 161 S.W.3d 248, 255 (Tex. App. 2005). "[A]n agent's

authority to act on behalf of a principal depends on some communication by the principal either to

the agent (actual or express authority) or to the third party (apparent or implied authority)." *Sealed*

*Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 632–33 (5th Cir. 2015) (quotations and

alterations omitted).

PointEast has sufficiently demonstrated that Trubrich acted as Lenzing's actual or apparent

agent in his dealings with PointEast. First, Lenzing's own conduct demonstrates its desire to have

Trubrich represent it and shows its involvement in Hygiene Austria more generally. Lenzing put

Trubrich in the position of Vice President of Capital Markets which, at this stage of the

proceedings, implicates that Lenzing allowed Trubrich to engage in general business dealings on

its behalf.[5] Lenzing issued press releases boasting that it created Hygiene Austria as a joint venture

---

[5] The Court recognizes that this *alone* does not give Trubrich authority to bind Lenzing in business contracts, *see Elaazami v. Lawler Foods, Ltd.*, No. 11-CV-120, 2012 WL 376687, at *4 (Tex. App. Feb. 7, 2012), but this is not the only evidence before the Court. Moreover, the cases cited by Lenzing on this issue involve a heavier evidentiary burden than here.

with Palmers to protect the public from COVID-19. (Dkt. No. 11-2 at 86–87.) Lenzing included—or at least did not seek to remove—its logo on mask packaging for Hygiene Austria. (Dkt. No. 12-2 at 105.) Lenzing reviewed and stamped an invoice for a sample mask shipment to PointEast in Texas. (Dkt. No. 30-1 at 407–19.) Lenzing loaned employees to Hygiene Austria who used their Lenzing email addresses when interacting with PointEast or about PointEast. (*See, e.g.*, Dkt. No. 11-2 at 34 (email chain introducing PointEast to employees with Lenzing email addresses), 60–64 (email chain regarding FDA approval from employees with Lenzing email addresses and signature blocks); Dkt. No. 30-1 at 427–31 (email chain regarding U.S. import regulation from employees with Lenzing email addresses and signature blocks).)[6] Some of Lenzing's other employees, who apparently were not among those loaned to Hygiene Austria, were also involved in dealings with PointEast. (*See* Dkt. No. 36 at 19 n.8; *see, e.g.*, Dkt. No. 30-1 at 389–91 (email exchanges regarding flammability testing among PointEast, Trubrich, and other non-loaned employees with Lenzing email addresses).) Finally, Lenzing's repeated statements that it is not in the mask business are confusing at best.[7]

Second, Trubrich clearly presented himself to PointEast as acting on behalf of Lenzing.[8] Trubrich consistently used his Lenzing email address to communicate with PointEast, even when

---

[6] Lenzing argues the employees it loaned to Hygiene Austria only used Lenzing email addresses inadvertently or because the Hygiene Austria email servers had not been set up yet. But at least some loaned employees had Hygiene Austria email addresses during the relevant time period, including Anna Doboczky. (*See, e.g.*, Dkt. No. 30-1 at 389, 422.)

[7] *Compare* Dkt. No. 2 at 14 ("Other than distributing them to its own employees or the employees of its subsidiaries, Lenzing AG has never manufactured, sold, marketed, or distributed hygienic facemasks."), *with id.* at 26 (recognizing the Lenzing logo is on Hygiene Austria packaging for masks sold in Europe), *and* Dkt. No. 30-1 at 400–06 (Lenzing invoices for purchase of mask materials, including N95 ear loops and nose wires).

[8] Lenzing argues the conduct of the agent is irrelevant to the agency analysis. There are some courts, however, that consider the conduct of an agent in certain circumstances. *See, e.g.*, *Phoenix Mining & Min., L.L.C. v. Treasury Oil Corp.*, No. 06-CV-58, 2007 WL 951866, at *8

he had his own Hygiene Austria address. (*See* Dkt. No. 11-2 at 7 (August 12, 2020 email showing Trubrich had both Lenzing and Hygiene Austria email addresses); *see, e.g.*, *id.* at 78 (December 22, 2020 email from Trubrich's Lenzing address to PointEast regarding mask shipment); Dkt. No. 30-1 at 364–65 (September 9, 2020 email from Trubrich's Lenzing address to PointEast with pictures of sample masks).) Trubrich portrayed to PointEast that Lenzing's lawyers were involved in mask shipments to the United States. (Dkt. No. 11-2 at 97 (email to PointEast from Trubrich's Lenzing email address stating, "I need to get the documents cleared by Lenzing's legal team before I get the green light for US export").) Trubrich also made it appear he was speaking on behalf of Lenzing or its subsidiary, Lenzing Fibers Inc., when discussing facemask production with PointEast. (*Id.* at 18 (email to PointEast from Trubrich's Lenzing address stating, "We are currently evaluating our options for setting up a PPE production at our site in Mobile [which is owned by Lenzing Fibers Inc.] . . . I think there are multiple opportunities for PointEast and Hygiene Austria to collaborate, particularly if we set up a local production site").) Trubrich even handed out his Lenzing business card during the October 2020 meeting with PointEast in Vienna. (*See id.* at 14.)

The Court recognizes that Lenzing also has evidence to support its theory that Trubrich was working on behalf of Hygiene Austria and that PointEast knew it was dealing with Hygiene Austria. For example, the draft term sheet lists the parties as PointEast and Hygiene Austria and the market research documents state they are reserved for Hygiene Austria only. (Dkt. No. 12-2 at 31; Dkt. No. 30-1 at 354.) However, given the evidence described above, PointEast could have reasonably believed these references encompass Hygiene Austria, Lenzing, and all of the

---

(S.D. Tex. Mar. 28, 2007). Trubrich's conduct here is relevant to Lenzing's arguments—particularly, that PointEast could not have believed Trubrich was acting on behalf of Lenzing.

overlapping employees.[9] In any event, conflicts in the evidence must be resolved in favor of PointEast at this stage. PointEast has made a prima facie showing that Trubrich acted on behalf of Lenzing in his dealings with PointEast. *See, e.g.*, *Stripling*, 234 F.3d at 870–71 (resolving all factual conflicts in favor of plaintiff in the context of agency and personal jurisdiction); *Phoenix Mining & Min., L.L.C. v. Treasury Oil Corp.*, No. 06-CV-58, 2007 WL 951866, at *8 (S.D. Tex. Mar. 28, 2007) (finding plaintiff made a prima facie showing of apparent agency when the agent used business cards, email addresses, and email signature blocks with the principal's name, among other reasons, and the principal did not exercise ordinary care to avoid the appearance that the agent acted on its behalf).

### 2. Trubrich's conduct on behalf of Lenzing is sufficient to establish minimum contacts and PointEast's claims arise out of those contacts.

Specific jurisdiction is a claim-specific inquiry and thus "the minimum-contacts test for personal jurisdiction in fraud differs from that in contract." *Trois*, 882 F.3d at 490. As to contract claims, "only those acts which relate to the formation of the contract and the subsequent breach are relevant. This includes prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 489 (quotations and citation omitted). As to tort claims, the proper focus is "the relationship among the defendant, the forum, and the litigation." *Id.* at 490 (quotations omitted); *see also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."). "[S]pecific jurisdiction may exist where there are only isolated or sporadic contacts, so long as the plaintiff's claim relates to or arises out of those contacts." *Constelia*, 669 F.3d at 499.

---

[9] The Court likewise finds it reasonable to construe PointEast's references to Hygiene Austria in the complaint as encompassing Lenzing.

Trubrich's actions on behalf of Lenzing establish minimum contacts for the breach of contract claims. The evidence shows that Trubrich communicated extensively with PointEast, a Texas corporation, regarding the negotiation, execution, and performance of a contract to distribute facemasks *in Texas*. This is not merely fortuitous contact and Lenzing should have reasonably anticipated being haled into court in Texas. *See, e.g.*, *Tornado Bus Co. v. Bus & Coach Am. Corp.*, No. 14-CV-3231, 2015 WL 5164731, at *4 (N.D. Tex. Sept. 2, 2015) (finding prima facie showing of personal jurisdiction when contract had the aim of establishing a long-term association with plaintiff, a known Texas resident, and "had the foreseeable and intended result of causing economic activity within [Texas]"); *Enviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 724–25 (S.D. Tex. 1999) (concluding that defendants "certainly established minimum contacts" with Texas by "actively solicit[ing] a contract in Texas, with a Texas firm, and having negotiated a contract, in Texas, which called for substantial, long-term performance in Texas").[10]

Trubrich's actions on behalf of Lenzing establish minimum contacts for the fraud and other tort claims. The evidence shows Trubrich sent numerous emails directed to Texas and participated in video calls with PointEast in Texas representing that he would engage PointEast to distribute facemasks in Texas, allegedly with no intention of ever following through with the relationship or compensating PointEast for its ideas. This is not merely fortuitous contact and Lenzing should have reasonably anticipated being haled into court in Texas. *See, e.g.*, *Wien Air Alaska, Inc.*, 195 F.3d at 212–13 (finding minimum contacts when defendant made fraudulent misrepresentations in telephone calls, letters, and faxes to plaintiff in Texas); *Small Ventures USA, L.P. v. Rizvi Traverse*

---

[10] The Court recognizes that merely contracting with a resident of the forum state and carrying out incidental activities in the forum state are insufficient to establish minimum contacts. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004). The contacts here, in contrast, are intentional and involve performance in Texas. *See Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992).

*Mgmt., LLC*, No. 11-CV-3072, 2012 WL 4621130, at *5 (S.D. Tex. Oct. 2, 2012) (finding defendants' phone calls and emails to Texas company in which they made false representations and concealed material facts sufficient to confer personal jurisdiction); *Copper & Brass Int'l, Corp. v. Manhattan Brass & Copper Co.*, No. 09-CV-23, 2009 WL 10705168, at *5 (N.D. Tex. Aug. 26, 2009) (finding personal jurisdiction over defendant for fraud claim when defendant made misrepresentations to plaintiff in Texas over the course of three phone calls).

In sum, minimum contacts exist here because Lenzing purposefully directed its activities to Texas and those activities give rise to PointEast's contract and tort claims. Lenzing does not argue the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. The Court thus has personal jurisdiction over Lenzing.

### III.   FORUM NON CONVENIENS

#### A.  Legal Standards

Under the doctrine of forum non conveniens, "a federal district court may dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). A defendant invoking forum non conveniens bears a heavy burden in opposing the plaintiff's choice of forum. *Id.* at 430. "[D]epriving the plaintiff of his chosen forum is an exceptional outcome, only appropriate when the balance is strongly in favor of the defendant," and plaintiff's choice should not be disturbed "except upon a clear showing of facts which establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience." *Indusoft, Inc. v. Taccolini*, 560 F. App'x 245, 248 (5th Cir. 2014) (quotations and alterations omitted). This is especially true when a plaintiff has chosen to sue in its home forum.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981). "The forum non conveniens determination is committed to the sound discretion of the trial court." *Id.* at 257.

In order to determine whether dismissal is proper under this analysis, a court must first find that an adequate and available alternative forum exists for the parties to litigate the dispute. *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211 (5th Cir. 2010). If such a forum exists, then the court must "weigh various private and public interest factors to determine whether dismissal is warranted." *Id.* These factors, described below, are "by no means exhaustive, and some factors may not be relevant in the context of a particular case." *Van Cauwenberghe v. Biard,* 486 U.S. 517, 528–29 (1988). Analysis of these factors is not a straight balancing test and, again, dismissal under the doctrine of forum non conveniens is "only appropriate when the balance is strongly in favor of the defendant." *Indusoft, Inc.*, 560 F. App'x at 248 (quotations omitted).

### B.  Analysis

Lenzing seeks dismissal in favor of trial in Austria. (Dkt. No. 2 at 48–50; Dkt. No. 13 at 33–37.) However, PointEast filed suit here in the Southern District of Texas as its home forum. (*See* Dkt. No. 1-2 at 58.) The Court finds that, although Austria is an adequate and available forum, Lenzing has not met its burden to demonstrate the private and public interest factors weigh strongly in favor of trying the case in Austria.

Austria is an available and adequate forum. "An alternative forum is considered available if the entire case and all parties can come within its jurisdiction." *Vasquez v. Bridgestone/ Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). "An alternative forum is adequate if the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Id.* (quotations omitted). However, "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no

remedy at all," it may not be appropriate to dismiss a case in favor of that forum. *Piper Aircraft Co.*, 454 U.S. at 254. "Though defendants must carry the burden of proving an adequate forum, they may rely on a presumption that the foreign forum is adequate." *Indusoft, Inc.*, 560 F. App'x at 248–49; *see DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007).

PointEast argues Austria is not an available or adequate forum because Lenzing did not show "that PointEast is within Austria's jurisdiction or that PointEast will not be deprived of all remedies," as Austria does not allow pretrial discovery and is a civil code country with different laws. (Dkt. No. 11 at 39.) However, the focus of the availability inquiry is whether the *defendant* is amenable to process in the alternative forum, and all Defendants here are citizens of Austria. *See Piper Aircraft Co.*, 454 U.S. at 254 n.22; *see also Morales v. Ford Motor Co.*, 313 F. Supp. 2d 672, 675–76 (S.D. Tex. 2004). Moreover, PointEast's arguments as to differences in law and discovery are conclusory and not pertinent to this threshold question. *See Barnett v. DynCorp Int'l LLC*, No. 15-CV-233, 2015 WL 12714715, at *5 (N.D. Tex. July 13, 2015) (rejecting plaintiff's adequacy and availability arguments as conclusory), *aff'd*, 831 F.3d 296 (5th Cir. 2016); *Deirmenjian v. Deutsche Bank, A.G.*, No. 06-CV-774, 2006 WL 4749756, at *10 (C.D. Cal. Sept. 25, 2006) ("[D]ifferences in the scope and mode of discovery—indeed, even the complete absence of pretrial discovery—do not render a forum inadequate."). Austria would be an available and adequate forum to try this case.

However, Lenzing has not shown the private or public interest factors strongly favor dismissal. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (3) probability of an opportunity to view the premises, if view would be appropriate to the action; and (4) other factors affecting the ease, speed, and expense of

trial or the enforceability of a judgment if obtained." *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 835–36 (5th Cir. 1993). "If these factors counsel dismissal, then the court need not proceed further" and may dismiss the case. *Morales*, 313 F. Supp. 2d at 674.

Lenzing argues these factors favor dismissal because: the majority of proof, witnesses, and parties are in Austria; nearly all of the relevant witnesses speak German and many of the documents are in German; any premises that may need to be inspected are in Austria; Texas cannot compel the attendance of unwilling witnesses; and PointEast will only be able to obtain testimony from Austrian witnesses who are willing to voluntarily leave Austria. (Dkt. No. 2 at 49; Dkt. No. 13 at 35–36.) The Court disagrees.

While there will be costs associated with litigation in Texas, Lenzing itself admits that the witnesses speak English and that much of the documentary evidence is in English and in electronic form. (*See* Dkt. No. 2 at 12; Dkt. No. 13 at 36; Dkt. No. 36 at 47 (noting only one-third of evidence produced during jurisdictional discovery is in German).)[11] Lenzing does not explain whether the cost of translating German documents or testimony to English for trial in Texas would be more expensive than the cost of translating English documents or testimony to German for trial in Austria. Moreover, expense is only one aspect of the analysis and is one which Lenzing, as a multi-national corporation with minimum contacts in Texas, appears in a better position to bear. As to Lenzing's other arguments, none suggest Austria is a clearly better forum. Lenzing fails to support or explain its assertion that Texas cannot compel the attendance of unwilling witnesses under Austrian law. Its argument that PointEast will only be able to obtain testimony from witnesses who

---

[11] Lenzing's estimation that one-third of the jurisdictional evidence is in German is misleading. There are certainly some documents and email exchanges that are entirely in German. However, the rest of the evidence is either only partially in German (*see* Dkt. No. 30-1 at 321–22, 357–59, 393–94, 421–25, 427–31, 436, 480–83) or already contains complete, certified English translations (*see id.* at 2–33, 35–72, 173–317).

are willing to leave Austria is framed only as an obstacle to PointEast's case, not Lenzing's case, and PointEast has clearly chosen to litigate in its home forum.[12] Lenzing also does not explain why any premises in Austria might need to be inspected. The private interest factors do not clearly weigh in favor of dismissal.

"[I]f the private interest factors do not weigh in favor of dismissal, then the court proceeds to examine a series of public interest factors." *Morales*, 313 F. Supp. 2d at 674. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in the forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Baumgart*, 981 F.2d at 837 n.14. "If these factors weigh in the moving party's favor, the district court may dismiss the case." *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002).

Lenzing argues these factors favor dismissal because: the courts in Houston are congested because of COVID-19 and severe weather; the case as pleaded may encompass Austrian law; and the Austrian press has extensively covered Hygiene Austria and its operations. (Dkt. No. 2 at 49–50; Dkt. No. 13 at 37.) The Court disagrees. Lenzing does not identify what severe weather is clogging the federal courts in Houston—indeed, no such weather has recently done so—and does not provide any reason to believe the Southern District of Texas is more congested due to COVID-19 than the courts in Austria. Moreover, Lenzing has not provided any analysis that would allow

---

[12] Lenzing cites *Pinnacle Packaging Co., Inc. v. Constantia Flexibles GmbH*, No. 12-CV-537, 2015 WL 9216845 (N.D. Okla. Dec. 17, 2015) for the proposition that depositions cannot be taken in Austria because Austria is not a member of the Hague Convention. (Dkt. No. 13 at 35–36.) Lenzing, however, fails to recognize that the court there directed an Austrian corporation to be deposed in the United States.

the Court to decide whether Austrian law applies in this case. PointEast does refer to Austrian contract law in its complaint, but it still maintains that Texas law should apply and makes no such reference in relation to its tort claims.[13] Finally, Texas has an interest in this lawsuit because it involves a Texas corporation that negotiated with Lenzing primarily from Texas, contracted to distribute facemasks in Texas, worked on design and branding ideas in Texas, and suffered injury in Texas.[14] The fact that the Austrian press may be interested in Hygiene Austria, presumably because Austrian authorities raided its headquarters and found mislabeled masks, does not tip the scales in favor of trial in Austria. The public interest factors do not clearly weigh in favor of dismissal.

Therefore, while Austria is an adequate and available forum, Lenzing has not demonstrated that the balance of factors weighs strongly in favor of Austria. *See, e.g.*, *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 221–22 (5th Cir. 2009) (finding the district court did not abuse its discretion in denying dismissal when there were witnesses in both forums, translation of documents would be inevitable in either forum, many of defendant's witnesses spoke English, the events giving rise to the suit took place in Texas, and federal courts can apply foreign law if necessary); *Altmann v. Republic of Austria*, 317 F.3d 954, 973–74 (9th Cir. 2002) (finding the public and private interest factors weighed heavily in favor of retaining jurisdiction even though the evidence, witnesses, and property at issue were in Austria and a U.S. court might be required to apply Austrian law). The case should remain in the Southern District of Texas.

---

[13] In a footnote separated from any of its forum non conveniens arguments, Lenzing points to a draft term sheet providing that any dispute would be arbitrated in Vienna and Austrian law would apply. (Dkt. No. 12 at 6 n.4) However, the parties never executed this term sheet.

[14] This is fundamentally different than the situation in *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1 (5th Cir. 2004), cited by Lenzing, where plaintiff's allegations pertained to an agreement negotiated, executed, and breached in Italy and associated with a sub-contracting bid to supply equipment to a Swedish facility in Sweden.

IV.     CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Defendant's Motion to Dismiss (Dkt. No. 2) and Motion to Strike (Dkt. No. 12) be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on August 12, 2022.

Sam S. Sheldon
United States Magistrate Judge