United States District Court
Southern District of Texas
**ENTERED**
December 09, 2024
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| POINTEAST PHARMA CONSULTING, INC., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. 4:21-CV-3654 |
| LENZING AKTIENGESELLSCHAFT, PALMERS TEXTIL AKTIENGESELLSCHAFT, HYGIENE AUSTRIA LP GMBH, STEPHAN TRUBRICH, TINO WIESER, | § § § § § § § § | |
| *Defendants.* | § | |

## ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

Pending before the Court is Plaintiff PointEast Pharma Consulting, Inc.'s ("Plaintiff" or "PointEast") Amended Motion for Default Judgment against Defendants Palmers Textil Aktiengesellschaft ("Palmers") and Tino Wieser ("Wieser"). (Doc. No. 121). The Court has considered the evidence, the pleadings on file, and the relevant authorities. (Doc. Nos. 121 and 122). Plaintiff dismissed its claims against Defendant Hygiene Austria LP GmbH ("HALP"), and has resolved its claims against Lenzing AG ("Lenzing") and Stephan Trubrich ("Trubrich"). As such, Plaintiff's only remaining claims are against Palmers and Wieser. Neither Defendant answered the Original Complaint nor filed any responsive pleadings or briefs. The Court concludes that PointEast has established that it is entitled to the requested judgment and GRANTS Plaintiff's Amended Motion for Default Judgment. (Doc. No. 121).

### I.       Background

PointEast is a United States-based pharmaceutical consulting company. (Doc. No. 121-1 at 3). PointEast is owned by Dr. Georg Fischer ("Dr. Fischer") and Mr. Leonard Fischer ("Mr.

Fischer"). (*Id.*). Defendants Lenzing and Palmers, both textile manufacturers, are entities based in Austria. (*Id.*). In 2020, Lenzing and Palmers jointly created HALP, also an Austrian entity. (*Id.* at 5). Defendant Trubrich, a citizen of Austria, is a Vice President of Lenzing. (*Id.* at 3–4). Defendant Wieser is part-owner of Palmers. (*Id.* at 4).

At issue in this case is an alleged contract whereby Plaintiff was to be the exclusive distributor of HALP's "Made in Austria" masks in the United States. Plaintiff alleges that amid the COVID-19 pandemic, Lenzing and Palmers created HALP to sell personal protective products, principally face masks. (*Id.* at 5). HALP allegedly undertook to produce "hundreds of millions of masks" for distribution outside of Austria. (*Id.* at 6). In July 2020, HALP contacted PointEast. (*Id.* at 5). Plaintiff claims that HALP inquired as to whether PointEast was interested in a long-term, exclusive distribution deal for the United States. Plaintiff responded that it was indeed interested. (*Id.* at 7).

HALP allegedly promised Plaintiff that it would create a joint venture in the United States that would be headquartered in Houston, Texas. (*Id.* at 6). Leonard Fischer was to act as lead manager of the United States venture. (*Id.*). Plaintiff claims that HALP told Mr. Fischer that he "could name [his] salary and title." (*Id.*). Over the next couple of months, the parties exchanged terms sheets and eventually agreed to finalize the term sheet during a meeting in Vienna, Austria. (*Id.* at 7). At this meeting, Dr. Fischer and Mr. Fischer, on behalf of PointEast, met with Trubrich, on behalf of Lenzing and HALP, and Wiser, on behalf of Palmers and HALP. (*Id.*). When Dr. Fischer inquired about finalizing the term sheet, Wieser assured him that no written contract was needed and that their verbal contract, accompanied by a handshake, is binding. (*Id.*). The parties then agreed to make PointEast HALP's exclusive distributor in the United States of HALP's "Made in Austria" face masks. (*Id.* at 8).

2

PointEast applied for and obtained, on behalf of HALP, permission from the United States Food & Drug Administration ("FDA") to import and sell the masks within the United States. (*Id.* at 13). This application required PointEast to identify the masks' production location, which PointEast listed as Austria. (*Id.*). PointEast claims it spent hundreds of hours:

> advising HALP, conducting market, pricing and federal grant research, creating a logistics plan, distributing mask samples, conceptualizing and providing branding and design work, developing N95/FFP2 prototypes, registering internet domains, business names and bank accounts, building an online store, establishing federal and state supplier accounts, corresponding with testing laboratories and hospitals, collecting competitor masks and sending them to Hygiene Austria, corresponding with FDA regulators, submitting FDA Emergency Use Authorization ("EUA") paperwork, and serving as Hygiene Austria's FDA import agent, all in an effort to prepare for promised distribution of "Made in Austria" masks in the United States.

(*Id.*). Plaintiff states that HALP, and thus Palmers and Wieser, benefited significantly from PointEast's work. (*Id.* at 9). On August 18, 2020, PointEast recommended that HALP use a red nosepiece on its masks to create brand recognition and "confer strong product quality identification in the United States." (*Id.*). HALP agreed to, and in fact did, use a red nosepiece on its masks. (*Id.* at 9, 11). PointEast alleges that, as a result of the "instantly recognizable" red nosepiece forged via "countless hours and considerable branding and design work," HALP earned over $609 million USD in sales. (*Id.* at 11–12).

Wieser, on behalf of HALP, allegedly made repeated statements claiming that the masks HALP sold were made in Austria. *See* (*Id.* at 12, 14–15). The masks, however, were actually made in China but labeled as "Made in Austria." (*Id.* at 15; Doc. No. 121-2 at 3). At the same time HALP offered to supply PointEast 500,000 of its "Made in Austria" masks, Austrian police were investigating HALP for the use of the false labels. (Doc. No. 121-1 at 15; Doc. No. 121-3). HALP allegedly never imported any masks to PointEast, nor did it create its United States venture or hire Mr. Fischer at his desired salary. (Doc. No. 121-1 at 16). HALP, instead, attempted to deflect the bad publicity from the police investigation by issuing a statement that it was correct in labeling its

3

masks "Made in Austria" because the masks were "made *for* Austria." (*Id.*). Plaintiff argues that this deflection shows that HALP knowingly contracted for masks that it had no plans to produce. (*Id.*).

PointEast filed this lawsuit in the 333rd Judicial District of Harris County, Texas. Lenzing removed the case to the Southern District of Texas. (Doc. No. 1). Plaintiff brings claims for fraud, fraud in the inducement, negligent misrepresentation, breach of express or implied contract, unjust enrichment, and violations of the Texas Theft Liability Act. (Doc. No. 121-1 at 21–24). Plaintiff further alleges that liability amongst or between defendants should be shared through theories of joint venture or joint enterprise and civil conspiracy. (*Id.* at 24–26). Plaintiff alleges that the Defendants breached the parties' verbal contract by failing to import any masks at all (let alone masks actually made in Austria), failing to establish the United States venture as promised, and failing to pay Plaintiff for the work it put into their business arrangement. (*Id.* at 18–19). Most significantly, Plaintiff states that Defendants wrongfully profited from an idea they took from PointEast—the red nosepiece—while refusing to pay Plaintiff anything. (*Id.* at 19).

As noted above, Plaintiff dismissed its claims against Defendant HALP, and has resolved its claims against Lenzing and Trubrich. Therefore, Plaintiff's only remaining claims are against Palmers and Wieser. Despite having been served with process, Defendants Wieser and Palmers have not appeared in the case or filed any responsive pleadings.[1] The Clerk entered default as to Palmers on April 16, 2024 (Doc. No. 115) and default as to Wieser on November 22, 2024 (Doc. No. 123) pursuant to Federal Rule of Civil Procedure 55(a). Plaintiff subsequently filed its

---

[1] As residents of Austria, Defendants were served in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. Nov. 15, 1965, 20 U.S.T. 361; *see* FED. R. CIV. P. 4(f)(1), (h)(2) (authorizing service under the Hague Convention); (Doc. Nos. 120 and 120-1).

4

Amended Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b). (Doc. No. 121).

## II.    Legal Standard

After default is entered, a plaintiff may seek default judgment under Federal Rule of Civil Procedure 55(b). *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). The plaintiff must submit evidence supporting that the defendant has been properly served with the summons, complaint, and the default judgment motion. *James Avery Craftsman, Inc. v. Sam Moon Trading Enters., Ltd.*, No. 16-CV-463, 2018 WL 4688778, at *3 (W.D. Tex. July 5, 2018) (citing *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649–51 (5th Cir. 1988)); *Hazim v. Schiel & Denver Book Grp.*, No. H-12-1286, 2013 WL 2152109, at *1 (S.D. Tex. May 16, 2013). Absent proper service, a district court does not have personal jurisdiction over the defendant, and any default judgment is void. *See Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986).

"A default judgment is unassailable on the merits but only so far as it is supported by the well-pleaded allegations, assumed to be true." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "There must be a sufficient basis in the pleadings for the judgment entered." Nishimatsu Constr. Co., 515 F.2d at 1206. For the court to enter default judgment, the complaint must satisfy Federal Rule of Civil Procedure 8. *See Wooten*, 788 F.3d at 497–98. "On appeal, the defendant, although he may not challenge the sufficiency of the evidence, is entitled to contest the sufficiency of the complaint and its allegations to support the judgment." *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

5

Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 573 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility than a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

## III.   Analysis

Courts in the Fifth Circuit have developed a three-part analysis to determine whether a default judgment should be entered. The Court must consider three questions: (1) if a default judgment is procedurally appropriate; (2) if the plaintiff has presented a colorable claim in its pleadings; and (3) how to calculate damages or equitable relief. *Vela v. M&G USA Corp.*, 2020 WL 421188, at *1 (S.D. Tex. Jan. 27, 2020). The Court finds that each of these requirements has been met.

### A.  PointEast has shown that default judgment is procedurally warranted.

As a matter of longstanding Fifth Circuit law, default judgments are generally disfavored. *See Sun Bank v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the Federal Rules and resorted by courts only in extreme situations."). The Court must consider relevant factors, including: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds

6

for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of the default judgment based on the circumstances; and (6) whether the court would think itself obliged to set aside the default on the [defaulting party's] motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The Court finds that each of these considerations weigh in favor of default judgment in this case.

First, there are no material facts at issue. Defendants have not filed an answer or any responsive pleadings since being served in this case; consequently, there are no material facts in dispute. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.").

Second, there does not seem to he any threat of substantial prejudice to the Defendant. Moreover, Defendants' "failure to respond threatens to hring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C–10–390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011).

Third, the grounds for default are well established by Defendants failure to "plead or otherwise defend" against PointEast's claims, despite being properly served. Fed. R. Civ. Pro. 55(a). Further, none of the typical exceptions to default apply, reflected in the Clerk's entry of default. This factor weighs in favor of default judgment.

Fourth, the question of good faith mistake or excusable neglect is slightly more difficult. Defendant Wieser is a citizen of, and resides in, Austria. (Doc. No. 121-1 at 4). Defendant Palmers is an entity incorporated in Austria with its principal place of business in Vienna, Austria. (*Id.* at 3). The requisite documents have heen mailed first class to Palmers's Austrian address. (Doc. No. 21). Wieser was served via both first-class mail and email after the Court permitted alternative

7

service of process in its prior order. (Doc. No. 90). The service is deemed legally sound, even if the Plaintiff cannot show Defendants have *actual* notice of the suit. Thus, the Court finds that this factor is neutral.

Fifth, default judgment is not harsh under the circumstances. PointEast seeks only the relief to which it is entitled under the law, mitigating the harshness of a default judgment against Defendants. *See Lindsey*, 161 F.3d at 893.

Sixth, and finally, absent a compelling reason the Court does not find itself likely to set aside the default upon Defendants' motion. Defendants have failed to answer or appear at any time during the pendency of this suit—now pending over three years—despite being served numerous ways over the course of several months. Further, based on the Defendants' lack of appearance or response, the likelihood of the Defendants making such a motion seems remarkably low. Thus, this factor also weighs in favor of default judgment.

All of the *Lindsey* factors weigh in Plaintiffs favor. Therefore, the Court concludes that default judgment is procedurally warranted.

## B. PointEast has pled substantively meritorious claims.

Next, the Court must determine whether the pleadings provide a "sufficient basis" for entering default judgment. *Nasufi*, 2017 WL 6497762, at *2. Due to their default, Defendants are deemed to have admitted the well-pleaded facts alleged in the Complaint. *See United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (finding that the well-pleaded factual allegations are assumed to be true, except regarding damages). Nonetheless, the Court must review the pleadings to determine the substantive merits of PointEast's claims for relief. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. As noted above, Plaintiff brings claims for fraud, fraud in the

inducement, negligent misrepresentation, breach of express or implied contract, unjust enrichment, and violations of the Texas Theft Liability Act.

### 1. Fraud, fraud in the inducement, and negligent misrepresentation

PointEast asserted claims for common-law fraud against the Defendants. (Doc. No. 121-1, at 19–21). In Texas, the elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)). In federal court, fraud claims must meet the heightened pleading standard of Rule 9. FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

PointEast's Complaint adequately alleges a cause of action for fraud under this heightened pleading standard. The complaint identifies a series of false statements made by Defendants concerning the purported HALP United States venture business opportunity. (Doc. No. 121-1 at 12, 14–15). PointEast alleges Defendants made these false intentionally and knowingly. (*Id.* at 16). Moreover, Plaintiff asserts reliance and causation, stating that "PointEast relied on their false representations to its detriment, including by dedicating countless hours and considerable branding

and design work, causing [HALP's] masks to become instantly recognizable in the market as Hygiene Austria masks.... as a result of PointEast's work" (*Id.* at 20–21). Thus, Plaintiff has satisfied each element of a common law fraud claim. The Court finds that the pleadings provide a sufficient basis for entering default judgment on this cause of action.

### 2. Breach of contract

PointEast has also asserted claims for breach of contract against the Defendants. (Doc. No. 1, at 10–11). Under Texas law, to prevail on a breach-of-contract claim a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). The allegations set out in the Complaint satisfy these four elements. Specifically, the Complaint alleges: (1) the oral agreement between the parties constitutes a valid, enforceable contract (Doc. No. 121-1 at 7–8); (2) PointEast performed or was excused from performing its contractual obligations (*Id.* at 13); (3) Defendants have failed to pay the amounts owing under the contracts (*Id.* at 18–19); and (4) Defendants' breaches have caused significant financial injury to PointEast. (*Id.*). Given these well-pleaded factual allegations, default judgment is appropriate for Plaintiff's breach of contract cause of action.

Plaintiff also asserts an unjust enrichment cause of action. Texas law is not completely clear as to whether unjust enrichment constitutes an independent cause of action rather than a theory of restitution used when calculating damages. *Compare Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (finding that unjust enrichment is an independent cause of action), *with Davis v. OneWest Bank N.A.*, No. 02-14-

10

00264-CV, 2015 WL 1623541, at *1 (Tex. App.—Fort Worth, Apr. 9, 2015, pet. denied) (finding that unjust enrichment is not an independent cause of action); *see also Perales v. Bank of Am., N.A.*, No. CIV.A. H-14-1791, 2014 WL 3907793, at *3 (S.D. Tex. Aug. 11, 2014). Nevertheless, whether unjust enrichment is characterized as a cause of action or a theory of recovery, the elements are clear.

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 384 (5th Cir. 2020) (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Unjust enrichment claims are based on quasi-contract and are predicated on the absence of an express contract controlling the circumstances. *See Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000).

PointEast alleges Defendants benefited, either by fraud or by taking of an undue advantage, from PointEast's work on the branding and designs of the face masks. (Doc. No. 121 at 13). Plaintiff states that it explicitly recommended Defendants use a red nosepiece to build brand recognition. (Doc. No. 121-1 at 9). The red nosepiece is claimed to be the cause of Defendants' earning hundreds of millions of Euros. (*Id.* at 22). Plaintiff alleges that Palmers and Wieser unjustly obtained the revenue generated from the design and wrongfully retained such benefits to the detriment of PointEast. (*Id.* at 22).

Still, the Court is uncertain whether Plaintiff, as pleaded, can recover under both a breach of contract cause of action and an unjust enrichment cause of action. *See Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001) (citing *Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964)) ("In Texas, unjust enrichment is based on quasi-contract and is unavailable when a valid, express contract governing the subject matter of the dispute exists.").

Pursuant to Federal Rule of Civil Procedure 55(b), the Court "may conduct hearings when, to enter or effectuate judgment, it needs to: . . . establish the truth of any allegation by evidence or investigate any other matter." FED. R. CIV. P. 55(b)(2). Thus, the Court will conduct a hearing to determine whether Plaintiff may recover under just one or both causes of action.

### 3. Texas Theft Liability Act

Plaintiff also brings claims under the Texas Theft Liability Act ("TTLA"). Pursuant to the TTLA, a person who commits theft is liable for the damages resulting from the theft. TEX. CIV. PRAC. & REM. CODE ANN. § 134.003(a). "Theft" is defined as "unlawfully appropriating property or unlawfully obtaining services as described by sections 31.03–31.07, or 31.11–31.14 of the Texas Penal Code." *Id.* § 134.002(a). "A person commits theft of service if, with intent to avoid payment for service that the actor knows is provided only for compensation the actor intentionally or knowingly secures performance of the service by deception. . . ." TEX. PEN. CODE § 31.04(1).

PointEast alleges Defendants promised to make Plaintiff the exclusive United States distributor of its products, and made this promise without the intent to pay for PointEast's work. (Doc. No. 121-1 at 16). PointEast claims the services would not have been provided but-for Defendants' promise of compensation. (*Id.* at 22). Plaintiff also states that, "[a]cting with the intent to avoid payment, Defendants intentionally and knowingly secured PointEast's performance of its services by deception." (*Id.*). Given these well-pleaded factual allegations, default judgment is appropriate for Plaintiff's TTLA claim. While the statute entitles PointEast to recover reasonable and necessary attorney's fees, Plaintiffs do not provide evidence to support such a claim.

### C. Damages

After a court determines default judgment can be entered, the court must determine what form of relief, if any, to which the plaintiff is entitled. *Nasufi*, 2017 WL 6497762, at *2. The

plaintiff bears the burden of proving the amount of damages. *U.S. for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). The plaintiff must establish the necessary facts, either through detailed affidavits or an evidentiary hearing, to show its damages are "capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). If a calculation can be made "with certainty by reference to the pleadings and supporting documents," a hearing to determine damages is unnecessary. *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993) (quoting *Frame v. S–H, Inc.*, 967 F.2d 194, 204 (5th Cir. 1992)).

Federal Rule of Civil Procedure 55(b)(2) also allows the Court to conduct hearings when it needs to determine the amount of damages. The general rule is "unliquidated damages normally are not awarded without an evidentiary hearing." *Leedo Cabinetry v. James Sales & Distribution, Inc.*, 157 F.3d 410, 414 (5th Cir. 1998). While there is an exception when the amount claimed is "one capahle of mathematical calculation," the Court finds that the exception is not applicable. *Id.* (citing *James v. Frame*, 6 F.3d 307, 309–10 (5th Cir. 1993)). Therefore, the Court will conduct a hearing to determine the amount of damages to which PointEast is entitled.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** PointEast's Motion for Default Judgment on the issue of liability against the remaining Defendants. (Doc. No. 121). The Court will set a hearing to determine: (1) whether Plaintiff may recover on both its breach of contract and unjust enrichment claims; and (2) the amount of damages to which PointEast is entitled.

SIGNED at Houston, Texas this ⁹ᵗʰ day of December, 2024.

Andrew S. Hanen
United States District Court Judge

13