United States District Court
Southern District of Texas
**ENTERED**
February 21, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| POINTEAST PHARMA CONSULTING, INC., § § § *Plaintiff*, § § v. § § PALMERS TEXTIL AKTIENGESELLSCHAFT, and TINO WIESER, § § § § § *Defendants*. § | CIVIL ACTION NO. 4:21-CV-3654 |

**ORDER**

Pending before the Court is Plaintiff PointEast Pharma Consulting, Inc.'s ("Plaintiff" or "PointEast") Amended Motion for Default Judgment against Defendants Palmers Textil Aktiengesellschaft ("Palmers") and Tino Wieser ("Wieser") (collectively, "Defendants"). (Doc. No. 121). The Court previously granted Plaintiff's Motion regarding Defendants' liability. (Doc. No. 124). After holding an evidentiary hearing on February 19, 2025, the Court now considers the amount of damages to which PointEast is entitled.

**I.    Background**

The facts creating this dispute are thoroughly laid out in the Court's previous order. (Doc. No. 124). Plaintiff's claim for damages, however, was not. As such, the Court will only briefly summarize Plaintiff's causes of action before addressing its allegations regarding damages.

Plaintiff brought claims for fraud, fraud in the inducement, negligent misrepresentation, breach of express or implied contract, unjust enrichment, and violations of the Texas Theft Liability Act. (Doc. No. 121-1 at 21–24). Plaintiff alleges that Defendants breached the parties' verbal contract by failing to import any masks (let alone masks actually made in Austria), failing

1

to establish the United States venture as promised, and failing to pay Plaintiff for the work it put into their business arrangement. (*Id.* at 18–19). Plaintiff also states that Defendants wrongfully profited in Europe from an idea they took from PointEast—the red nosepiece—while refusing to pay Plaintiff anything. (*Id.* at 19).

As a result, Plaintiff seeks actual damages of $50,090,000.00—comprised of $33,650,000.00 for the breach of contract damages sustained in the United States for the years 2021 through 2030 plus $16,450,000.00 for the damages sustained throughout the European Union for the years 2020 through 2025. (*Id.* at 20). In the alternative, Plaintiff contends that it should be awarded $24,390,000.00—comprised of $13,030,000.00 for the breach of contract damages sustained in the United States for the years 2021 through 2023 plus $11,360,000.00 for the damages sustained throughout the European Union for the years 2020 through 2023. (*Id.*). At the evidentiary hearing, Plaintiff clarified that it is no longer seeking pre-judgment interest nor attorney's fees, but continues to seek post-judgment interest.

## II.    Legal Standard

After a court determines default judgment can be entered, the court must determine what form of relief, if any, the plaintiff is entitled to. *Nasufi v. King Cable Inc.*, No. 3:15-CV-3273-B, 2017 WL 6497762, at *2 (N.D. Tex. Dec. 19, 2017). The plaintiff bears the burden of proving the amount of damages. *U.S. for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). The plaintiff must establish the necessary facts, either through detailed affidavits or an evidentiary hearing, to show its damages are "capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

### III. Analysis

PointEast supports its request for damages with testimony from Dr. Georg Fischer ("Dr. Fischer"). Dr. Fischer is PointEast's current Senior Consultant and was tendered as an expert witness at the evidentiary hearing. Dr. Fischer's testimony focused on two distinct groups of damages: 1) damages sustained in the United States; and 2) damages sustained throughout the European Union.

#### A. Damages sustained in the United States

Dr. Fischer testified that the damages Plaintiff sustained in the United States (the "U.S. Damages") resulted from Defendants' breach of the contract. Dr. Fischer calculated that PointEast sustained damages of $33,650,000.00 as a result of Defendants' breach. PointEast provided evidence of its estimated market share, revenue, cost of goods sold, regulatory costs, depreciation, and amortization. (Doc. No. 121-5 at 23). Dr. Fischer used these figures to calculate the EBIT (Earnings Before Interest and Taxes). From there, Dr. Fischer discounted the EBIT in order to calculate the Present Value for each year between 2021 and 2030. (*Id.*).

Dr. Fischer used the 2021 through 2030 timeframe to calculate damages because PointEast maintains that the contract had a ten-year term. The cumulative value ($33,650,000.00) is the amount that PointEast asserts it should be awarded. (*Id.*). Dr. Fischer testified that the parties agreed that the term of the contract would begin January 2021. Plaintiff contends that industry customs dictate the term of the contract. A contract of the kind entered into by the parties typically includes a five-year initial term that automatically renews for another five years, unless a party opts out. Thus, Plaintiff concludes, it should be awarded damages from 2021 through 2030—the full ten-year term.

3

The Court finds it too uncertain that the parties would continue to operate under the contract after the initial term expires rather than opt out after the expiration of the initial term. Nevertheless, Plaintiff has satisfied its burden to prove that it is entitled to damages for the initial five-year term. Dr. Fischer provided calculations for each year from 2021 through 2030. This allows the Court to easily segregate the two halves and award Plaintiff damages for the initial five-year term alone. Thus, the Court enters default judgment with respect to the U.S. Damages in the amount of $21,590,000.00—the amount of damages sustained from 2021 through 2025. (*Id.*)

### B. Damages sustained throughout the European Union

Plaintiff also seeks damages in the amount Defendants were unjustly enriched through its behavior in the European Union (the "EU Damages"). PointEast alleges Defendants benefited, either by fraud or by taking of an undue advantage, from PointEast's work on the branding and designs of the face masks. (Doc. No. 121 at 13). Plaintiff states that it explicitly recommended Defendants use a red nosepiece to build brand recognition. (Doc. No. 121-1 at 9). Dr. Fischer testified that the red nosepiece was intended to signify to customers that the mask is one they can trust because it was made in Austria. The red nosepiece is said to be the reason Defendants' earned hundreds of millions of Euros in mask sales. (*Id.* at 22).

Dr. Fischer testified that the typical royalty used for this type of intellectual property is 5%. Plaintiff, however, did not provide evidence of Defendants actual sales figures. Instead, PointEast offered evidence of Defendants' pitch deck that Defendants assembled ahead of the initial public offering. The pitch deck, therefore, does not represent revenue or profits earned by Defendants, only the estimates they shared with potential investors before going public. While Dr. Fischer testified that he discounted these figures to exclude masks that did not include the red nose piece, there is no evidence to suggest that the figures were discounted after it was revealed that the masks

4

were not made in Austria. Dr. Fischer repeatedly referred to this revelation as a "scandal" that damaged the company.

PointEast alleges that it is entitled to damages from 2020 through 2025. The Court finds, however, that the pre-scandal pitch deck figures/projections cannot support post-scandal damages. Since the scandal occurred in 2021, Plaintiff has provided sufficient evidence for its 2020 EU Damages only. Dr. Fischer again provided calculations for each year from 2020 through 2025, which allows the Court to easily award Plaintiff damages for 2020 alone. Thus, the Court enters default judgment with respect to the EU Damages in the amount of $950,000.00—the amount of damages sustained in 2020. (Doc. No. 121-5 at 39).

### C. Post-Judgment interest

Though Plaintiff abandoned its pursuit of pre-judgment interest and attorney's fees, Plaintff continues to seek post-judgment interest. District courts do not have the discretion to deny post-judgment interest on monetary judgments. *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017). As such, the Court is directed by federal statute to calculate post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).

### IV. Conclusion

Plaintiff is entitled to recover from and against the Defendants, jointly and severally: (a) $21,590,000.00 for the U.S. Damages; (b) $950,000.00 for the EU Damages; and (c) post-judgment interest at the applicable federal rate, *see* 28 U.S.C. § 1961, from the date of final judgment until paid in full.

In accordance with Rule 58(a) of the Federal Rules of Civil Procedure, final judgment will be entered separately.

Signed at Houston, Texas, this 21st day of February, 2025.

Andrew S. Hanen
United States District Judge